NUMBER 13-98-565-CR 



COURT OF APPEALS 



THIRTEENTH DISTRICT OF TEXAS 



CORPUS CHRISTI 

___________________________________________________________________ 



ERNEST VANGOSSEN, Appellant, 



v. 



THE STATE OF TEXAS, Appellee. 

___________________________________________________________________ 



On appeal from the County Court 

of Wharton County, Texas. 

___________________________________________________________________ 



O P I N I O N 



Before Chief Justice Seerden and Justices Hinojosa and
Yañez 

Opinion by Chief Justice Seerden 



This is an appeal from a conviction for driving while intoxicated.(1)
By two issues, Ernest Vangossen, appellant, contends that: (1) he was never placed under
arrest when requested to give a blood sample under the authority of the implied consent
statute; and (2) his consent to give a blood specimen was not voluntary and was not
attenuated from his allegedly illegal seizure. We affirm. 

Appellant was driving northbound on U.S. Highway 59 at approximately 3:35 p.m. on March
27, 1998. His vehicle collided with a guardrail and both appellant and the vehicle ended
up on the highway median. DPS Trooper Daniel Terronez arrived on the scene and conducted
an investigation. After examining the accident site, Terronez encountered appellant, who
acknowledged that he was the driver of the vehicle in question.(2)
During the course of this encounter, Terronez detected a strong odor of alcohol on
appellant's breath. Terronez asked appellant if he had been drinking, and appellant nodded
affirmatively. Terronez then conducted a horizontal gaze nystagmus test, which appellant
failed. 

At that point, Terronez informed appellant that he was under arrest. Appellant was
placed in the trooper's vehicle for transport to a nearby hospital where a blood sample
would be extracted. Appellant was not handcuffed and rode to the hospital in the front
seat of the Trooper's vehicle. Terronez did not administer the Miranda warnings
at any point during this trip. 

Upon their arrival at the hospital, Terronez escorted appellant to a lab within the
hospital. Once there, Terronez read a statutory warning to appellant, known within DPS as
a DIC-24. This warning reads, in pertinent part: 

You are under arrest for an offense arising out of acts alleged to have been committed
while you were operating a motor vehicle in a public place while intoxicated . . . . You
will be asked to give a specimen of your breath and/or blood . . . . If you refuse to give
the specimen, that refusal may be admissible in a subsequent prosecution. Your license,
permit, or privilege to operate a motor vehicle will be suspended or denied for not less
than ninety (90) days . . . . 



Appellant consented to a withdrawal of his blood. After the sample was taken, Terronez
placed appellant with a sober friend, rather than taking appellant to jail. Appellant was
not taken before a magistrate. The test results revealed that appellant had .37 grams of
alcohol per 100 milliliters of blood at the time of his arrest, or nearly four times the
legal limit. Appellant was then charged with driving while intoxicated. Terronez sent a
letter to appellant on May 17, 1998, informing him of the charges. 

The case was set for trial. Appellant filed a motion to suppress the results of the
blood test, claiming that he was either not under arrest or was illegally under arrest at
the time the sample was taken. He argued that because he was illegally detained, his
deemed consent to the blood test was invalid. Tex. Transp. Code Ann. 724.011(a) (Vernon
1999). Therefore, he contended, the blood test was illegal and the results thereof should
be suppressed. After hearing testimony and argument, the trial court denied appellant's
motion. Appellant subsequently pleaded guilty to the offense of driving while intoxicated.


In reviewing a ruling on a motion to suppress, we determine if the record supports the
trial court's factual findings. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990). We view the evidence in the light most favorable to the trial court's ruling. Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Absent a
clear abuse of discretion, we will not disturb the trial court's ruling. Alvarado v.
State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993). 

By his first issue, appellant contends he was not arrested when the blood sample was
taken. Appellant notes that article 15.22 of the Texas Code of Criminal Procedure states
that a person is under arrest "when he has been actually placed under restraint or
taken into custody by an officer or person executing a warrant of arrest, or by an officer
or person arresting without a warrant." He contends, however, that this definition
does not account for the distinction between a custodial arrest and a shorter,
investigative detention, such as a Terry stop. See Terry v. Ohio, 392
U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He contends that in this case, his detention
was more akin to a Terry stop than a custodial arrest. 

A person is "seized" for constitutional purposes when, under the
circumstances surrounding that seizure, a reasonable person would believe that he or she
is not free to leave. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct.
1870, 1877, 64 L.Ed.2d 497 (1980). At the time an individual is seized, his or her
interaction with the authorities is no longer considered an "encounter" and is,
therefore, imbued with the constitutional protections embodied in the Fourth Amendment.
However, the courts of this state have become increasingly aware of the amorphous
distinction between seizures which are investigative detentions, on the one hand, or
custodial arrests on the other. Recently, the court of criminal appeals noted that the
heretofore applied standards such as: (1) whether one's liberty of movement has been
restricted; (2) whether a person has been actually placed under restraint; and (3) whether
a reasonable person would have believed that he was not free to leave, have been
inadequate. Francis v. State, 922 S.W.2d 176, 179 (Tex. Crim. App. 1996)(3) (citations omitted). To eliminate the ambiguity, the court
proposed a new test, namely "whether, given the totality of the circumstances, a
reasonable person would believe the seizure was to be brief." Id. 

In assessing this standard, the court provided a laundry list of factors which a court
may consider. It noted at the outset of its analysis that "the actual length of time
the seizure lasts, while important, is not dispositive." Id. In other words,
"it is erroneous to assume that a reasonable person would have believed that the
seizure was to be brief simply because it actually was brief." Id. Another
element is the type and scope of the seizing officer's questions. "The officer's
questions must be such that they either vitiate or confirm his reasonable, articulable
suspicions, thereby leading to either release or arrest." Id. Additionally,
the court held that certain actions by authorities may be considered. Such actions
include: (1) the use of handcuffs; (2) drawn weapons; (3) approach by officers far
outnumbering the number of citizens; (4) use of threatening language; (5) moving the
citizen to another location; and (6) use of physical force to restrain the citizen. Id.
at 180. The court warned, however, that these factors only provide
"amplification of a reasonable person's sense that he or she will not soon be free to
leave." Id. 

Applying these criteria to the case at bar, we conclude that Trooper Terronez's
interaction with appellant rose to the level of an arrest. Upon his initial contact with
appellant, it is clear that Terronez was simply investigating the circumstances
surrounding the incident. Nothing in the record indicates that appellant was in any way
detained during this encounter. However, as the encounter persisted, Terronez developed at
least reasonable suspicion to believe that appellant had been operating a motor vehicle
while intoxicated. We reach that conclusion based upon not only Terronez's reported
observations, but also from the very answers appellant admits to providing to Terronez.
Appellant agrees that he told Terronez that he (appellant) was operating the vehicle which
was involved in the accident. Appellant furthermore agrees that he told Terronez that he
had been drinking alcohol prior to the incident. Based on those facts, Terronez's
encounter became an investigative detention for a sufficient period to administer a field
sobriety test, to which appellant consented. Upon appellant's inability to pass the
sobriety test, Terronez had fully developed probable cause to arrest appellant for driving
while intoxicated. 

Appellant argues that several factors indicate that he was not subject to a
"custodial arrest." First, he contends that he was not handcuffed. See Delk
v. State, 855 S.W.2d 700 (Tex. Crim. App. 1993). While the use of handcuffs is
certainly a consideration in assessing a suspect's freedom of movement, we find no
authority indicating that all arrested persons must be handcuffed. Next, appellant
contends that because he was placed in the front seat of the Trooper's vehicle for
transport to the hospital, he was not under arrest. However, the mere fact that appellant
was placed into the vehicle with an intent to be taken to a different location falls
within the Francis court's indicia of arrest. 

Appellant further argues that he was never administered Miranda warnings(4) while purportedly under arrest. However, the failure of
authorities to administer the Miranda warnings has no bearing on our
determination of the present Fourth Amendment issue; instead, it goes to the voluntariness
of confessions following arrest under the protections of the Fifth Amendment. Edwards
v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1977); Jones v. State,
742 S.W.2d 398, 402 (Tex. Crim. App. 1987). In this same vein, appellant contends that
because he was not taken before a magistrate following his seizure, he could not be deemed
to be under arrest. Tex. Code Crim. Proc. Ann. art. 14.06(a) (Vernon 1998). However, the
failure to take an arrestee before a magistrate has no bearing on the validity of the
arrest itself. See generally Jones v. State, 944 S.W.2d 642, 649-50 (Tex. Crim.
App. 1996) (delay or failure in taking accused before magistrate may invalidate a
confession upon proof of a causal connection between the delay and the confession); Lookingbill
v. State, 855 S.W.2d 66, 75 (Tex. App.--Corpus Christi 1993, pet ref'd) (same). 

Finally, appellant contends that he was not arrested because he was released into the
custody of a friend after the blood sample was taken, rather than being taken to jail.
This, again, however, has no bearing on the legality of the arrest. This fact indicates
that after the blood sample was taken, appellant was free to go; it does not, however,
negate the expressly-stated fact that prior to that time, appellant was not at liberty to
leave. 

We find that after Terronez informed appellant that he was under arrest, a reasonable
person would not have believed that the seizure would be brief. Accordingly, we hold that
appellant was validly under arrest at the time his blood sample was taken. Appellant's
first issue is overruled. 

By his second issue, appellant contends that his consent to the blood test was invalid.
The relevant statute provides: 

If a person is arrested for an offense arising out of acts alleged to have been
committed while the person was operating a motor vehicle in a public place . . . the
person is deemed to have consented, subject to this chapter, to submit to the taking of
one or more specimens of the person's breath or blood for analysis to determine the
alcohol concentration. . . . 



Tex. Transp. Code Ann. 724.011(a) (Vernon 1998). We have held that appellant was under
arrest at the time his blood sample was extracted. Because appellant was under arrest,
Terronez read him the statutorily-required warnings which include an admonition that
refusal to consent to the requested test will automatically result in drivers' license
suspension. Tex. Transp. Code Ann. 724.015(2) (Vernon 1998). Appellant then consented to
the test. We find no coercion present in this circumstance which would vitiate the
voluntariness of appellant's consent. Accord Nottingham v. State, 908 S.W.2d 585,
589 (Tex. App.--Austin 1995, no pet.). The second issue is overruled. 

We hold that the trial court did not abuse its discretion in denying appellant's motion
to suppress. Accordingly, the judgment of the trial court is AFFIRMED. 







_________________________________ 

ROBERT J. SEERDEN, Chief Justice 



Do not publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed 

this 23rd day of March, 2000. 

1. Tex. Penal Code Ann. 49.04(b) (Vernon 1998). 

2. This was corroborated by another witness at the scene. 

3. The opinion in Francis is actually a concurring and
dissenting opinion authored by Judge Baird to the court's dismissal of a petition for
discretionary review as improvidently granted. However, the proposed holding espoused by
Judge Baird has subsequently been relied upon by at least two of our sister courts and has
now gained the tacit approval of the court of criminal appeals based upon the
refused petition in Tate. See Glenn v. State, 967 S.W.2d 467, 470 (Tex.
App.--Amarillo 1998, pet. dism'd); Tate v. State, 939 S.W.2d 738, 749 (Tex.
App.--Houston [14th Dist.] 1997, pet ref'd). 

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16
L.Ed.2d 694 (1966).