# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00532-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Rhonda Hogue Lee, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-11-004268, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Department of Public Safety appeals the county court at law's order reversing an administrative law judge's decision authorizing suspension of Rhonda Hogue Lee's driver's license based on her refusal to provide a blood specimen after her arrest for driving while intoxicated. *See* Tex. Transp. Code Ann. § 524.035 (West Supp. 2012); *id*. § 724.043 (West 2011).[1] The Department argues in its single issue on appeal that the county court at law erred in reversing the administrative law judge's order because it was supported by substantial evidence. For the reasons that follow, we will reverse the county court at law's order and render judgment affirming the administrative law judge's order.

---

[1] Because there has been no change to the substance of the statutes relevant to this appeal, we cite their current versions.

# BACKGROUND

Rhonda Hogue Lee refused to provide a blood specimen for alcohol-concentration analysis as required by the implied-consent statute applicable to DWI arrests, and she challenged the administrative suspension of her driver's license by requesting a contested-case hearing. Officer Morrow's eight-page Peace Officer's Sworn Report was admitted at the administrative hearing without objection.[2] According to the report, on a clear weekday at 2:45 p.m., the Lakeway Dispatch Center notified Officer D. Morrow and Sergeant B. Kuecker of the Bee Cave Police Department about a single-vehicle collision on Hamilton Pool Road, where a witness reported seeing Rhonda Hogue Lee's truck drive through a stop light at the intersection of Highway 71 and RR 620, travel outside her own lane "all over the road," and eventually strike a guardrail near Bee Cave Elementary School. At the scene, Officer Morrow talked to Lee, who had difficulty speaking clearly, repeated things, and admitted that she had been drinking an hour before the accident, although she was unsure how much she had to drink.[3] Travis County Emergency Medical Services staff who treated Lee told Officer Morrow that Lee also admitted taking three .5 milligram doses of Clonazepam, despite instructions on the bottle to consume no more than 1 per day and not to drink alcohol with the drug.[4] Because Lee was transported directly from the scene to the hospital

---

[2] This report was the only evidence at the administrative hearing.

[3] Lake Travis Fire Department staff informed Officer Morrow that Lee also told them she had been drinking earlier in the day.

[4] Clonazepam is used as an anticonvulsant in the treatment of seizures and panic disorder. Dorland's Illustrated Medical Dictionary 379 (31st ed. 2007).

2

for treatment of neck and back injuries, Officer Morrow was unable to perform standardized field sobriety tests with her.

Officer Morrow went to the hospital, where he read to Lee a statutory warning form (DIC-24), advising her:

> You are under arrest for an offense arising out of acts alleged to have been committed while you were operating a motor vehicle . . . in a public place while intoxicated. . . . You will be asked to give a specimen of your breath and/or blood. The specimen will be analyzed to determine the alcohol concentration or presence of a controlled substance, drug, dangerous drug, or other substance in your body.

Officer Morrow also read to Lee the warning that refusal to provide the specimen would result in suspension of her driver's license for at least 180 days. Once he completed reading the statutory warning to her, Officer Morrow requested a blood specimen. Lee refused. Lee's blood specimen was subsequently obtained pursuant to a search warrant. After the blood draw, Officer Morrow did not take Lee to jail. Rather, he advised her that she would not be arrested at that time, and a warrant for her arrest would issue later.

At the ensuing license-suspension hearing, Officer Morrow's report was admitted into evidence, and the parties made closing arguments. Lee argued that her blood specimen should not have been requested because she was eventually told that she was not under arrest. The Department noted that the statutory warning Lee received began by informing her that she had been placed under arrest, and events occurring afterward were irrelevant to her license-suspension proceeding.

Rejecting Lee's argument that she was not under arrest, the ALJ issued an Administrative Decision and Order concluding that the Department proved the statutory license-

3

suspension elements, that Lee's license was subject to a statutory 180-day suspension, and that the Department was authorized to suspend Lee's driving privileges. The ALJ's Decision incorporated the following findings of fact and conclusion of law:

## FINDINGS OF FACT

(1) On October 28, 2010, reasonable suspicion to stop the Defendant existed, in that the Defendant was involved in a collision after failing to stop at a stoplight and failing to maintain a single lane of travel.

(2) On the same date, probable cause to arrest the Defendant existed because the Defendant admitted to drinking and taking a medication that can have enhanced effects with alcohol. The Defendant was injured in the accident and transported to the hospital, so no field sobriety tests were performed.

(3) Defendant was placed under arrest and was properly asked to submit a specimen of breath or blood.

(4) After being requested to submit a specimen of breath or blood, Defendant refused.

## CONCLUSIONS OF LAW

Based on the foregoing, the Judge concludes the Department proved the issues set out in Tex. Transp. Code Ann. § 524.035 or 724.042 and that Defendant's license is subject to a suspension for 180 days pursuant to Tex. Transp. Code Ann. § 724.035.

Lee appealed to the county court at law, challenging the agency's "findings, inferences, and decisions." However, her only argument at the hearing was that there was not substantial evidence supporting the ALJ's finding that she was under arrest. The Department responded that there was substantial evidence to support the ALJ's finding and that Lee was under arrest when Officer Morrow requested the blood specimen from her. The county court at law issued

4

an order reversing the administrative decision and overruled the Department's motion for new trial. The Department appeals the order reversing the administrative decision.

## ANALYSIS

**Implied consent and administrative license suspension**

Under the implied-consent statute, a person who is arrested for driving while intoxicated is deemed to have consented to provide a breath or blood specimen for alcohol-concentration analysis. Tex. Transp. Code Ann. § 724.011 (West 2011).[5] Thus, when a peace officer arrests a person and has reasonable grounds to believe that the person operated a motor vehicle in a public place while intoxicated, the officer may request a specimen of the person's blood. *Id*. § 724.012(a)(1) (West 2011). If the person refuses to comply, the Department must suspend the person's license to operate a motor vehicle on a public highway for 180 days. *Id*. § 724.035(a)(1) (West 2011). A person whose license is suspended for refusing to provide a specimen may request an administrative hearing. *Id*. § 724.041 (West 2011). The four issues to be addressed at a license-suspension hearing are whether:

(1) reasonable suspicion or probable cause existed to stop or arrest the person;

(2) probable cause existed to believe that the person was:

    (A) operating a motor vehicle in a public place while intoxicated; or

---

[5] The implied consent statute does not affect an officer's right to obtain a search warrant for the blood draw. *Beeman v. State*, 86 S.W.3d 613, 615-16 (Tex. Crim. App. 2002) (concluding that implied-consent statute "gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant").

(B)  operating a watercraft powered with an engine having a manufacturer's rating of 50 horsepower or above while intoxicated;

(3)  the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4)  the person refused to submit to the taking of a specimen on request of the officer.

*Id*. § 724.042 (West 2011).  The third issue is the only one that Lee argued and briefed, i.e., whether "[she] was placed under arrest by the officer."  *Id*. § 724.042(3).

We apply the substantial-evidence standard in our review of administrative license suspension decisions.  *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam); *see* Tex. Transp. Code Ann. § 724.047 (West 2011); *id*. § 524.043 (West 2007).  In applying the substantial-evidence standard, we may not substitute our judgment for that of the agency.  *Mireles*, 9 S.W.3d at 131; *Department of Pub. Safety v. Suarez*, No. 03-10-00856-CV, 2011 Tex. App. LEXIS 6981, at *7-8 (Tex. App.—Austin Aug. 25, 2011, no pet.) (mem. op.).  The issue before us, as a reviewing court, is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action.  *Mireles*, 9 S.W.3d at 131; *Suarez*, 2011 Tex. App. LEXIS 6981, at *8.  We must affirm administrative findings in contested cases if more than a scintilla of evidence supports them.  *Mireles*, 9 S.W.3d at 131; *Suarez*, 2011 Tex. App. LEXIS 6981, at *8.  However, the question of "whether there is substantial evidence to support an administrative decision is a question of law, and on questions of law, neither the trial court nor the administrative law judge is entitled to deference on appeal."  *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006); *Suarez*, 2011 Tex. App. LEXIS 6981, at *8.  Thus, we review de novo the trial court's determination of whether substantial evidence supports

the administrative decision.  *See Texas Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio 2008, no pet.); *Suarez*, 2011 Tex. App. LEXIS 6981, at *8.

**Arrest**

Implied-consent law applies in the context of a DWI arrest.  *See* Tex. Transp. Code Ann. § 724.011.  An arrest occurs "when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority," and is complete when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000) (quoting *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988)).

Lee argues that because she was not arrested, implied-consent law did not apply here.[6] She argues first that she was not arrested because she was not handcuffed or restrained by Officer Morrow and she refused to yield to his authority by refusing his request for a blood specimen.  We disagree.  There is no requirement that an officer use physical restraint, such as handcuffs, to accomplish an arrest.  *See Medford*, 13 S.W.3d at 773.  And the record reflects that

---

[6] Lee also makes the questionable assertion that Officer Morrow was outside his jurisdiction. However, Lee made the opposite representation to the court below:

> "[I]n this situation the actual investigation started in Travis County and then it moved over into Williamson County, so I think it would be one of the exceptions where he would be able to do it . . . to be candid with the Court, I think that it would have been fine."

Lee offers nothing supporting her change of position before this Court, and her assertion is unpersuasive.

7

Lee, who was hospitalized for neck and back injuries when Officer Morrow informed her that she was under arrest, yielded to Officer Morrow's authority by failing to voice any protest or indicate any form of resistance or opposition to Officer Morrow's arrest declaration. Further, before receiving the implied-consent warning, Lee knew she had made several incriminating statements to Officer Morrow and her emergency health care providers about her recent drinking and increased dose of Clonazepam, which was contraindicated for use with alcohol. A reasonable person in Lee's situation would have understood that she was not free to leave after being told by a police officer she was under arrest for such conduct. *See Texas Dep't of Pub. Safety v. Latimer*, 939 S.W.2d 240, 244-45 (Tex. App.—Austin 1997, no writ) (per curiam) (reasonable person who was hospitalized and connected to intravenous tubes when informed by police officer that he was under arrest would not believe he was free to leave); *Nottingham v. State*, 908 S.W.2d 585, 587-88 (Tex. App.—Austin 1995, no writ) (reasonable person who was hospitalized, failed sobriety test, and told he was under arrest would not believe he was free to leave); *Bell v. State*, 881 S.W.2d 794, 799-800 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("A reasonable person, injured and lying on a hospital stretcher, hearing from a police officer the words 'you are under arrest'. . . could conclude that he was not free to leave."); *State v. Williams*, 814 S.W.2d 256, 259-60 (Tex. App.—Austin 1991) (evidence that officer advised person that he was under arrest and would have arrested that person upon release from hospital supported trial court's finding that appellee was under arrest), *aff'd*, 832 S.W.2d 52 (Tex. Crim. App. 1992); *see also Madeley v. State*, No. 03-07-00235-CR, 2008 Tex. App. LEXIS 1320, at *9-10 (Tex. App.—Austin Feb. 21, 2008, no pet.)

8

(mem. op., not designated for publication) (person who was injured and lying on hospital bed when trooper informed him that he was under arrest would conclude that he was not free to leave).

Nor does Lee's refusal to provide a blood specimen demonstrate that she refused to yield to Officer Morrow's show of authority. If declining to provide a blood specimen also constituted a refusal to yield to a show of authority, no license suspension for refusing to provide a blood specimen could ever be prosecuted. As previously noted, the third and fourth issues at the license suspension hearing are (3) "whether the person was placed under arrest by the officer and was requested to submit to the taking of a specimen" and (4) "whether the person refused to submit to the taking of a specimen on request of the officer." Acceptance of Lee's argument requires that evidence of the fourth element (declining to provide a blood specimen) would always nullify the third element (proof of an arrest). Lee cannot prevail on this argument because it leads to an absurd result, making the license-suspension statute a useless act. *See* Tex. Gov't Code Ann. § 311.021(4) (West 2005) (presuming that by enacting statute, Legislature intended result feasible of execution).

Lee further argues, citing *Combest v. State*, 981 S.W.2d 958 (Tex. App.—Austin 1998, pet. ref'd) (op. on remand), that she was never under arrest because she was eventually told that she was not under arrest and that a warrant would issue later. *Combest* does not support Lee's legal argument about her lack of arrest because the parties in that case *agreed* that appellant was not under arrest—i.e., it was not an issue raised for court resolution. *See Combest*, 981 S.W.2d at 960; *see also* Tex. R. App. P. 47.1 (requiring court opinions to address issues raised and necessary to final disposition). The only issue presented in *Combest* was "whether appellant's consent to the search was voluntary," and our plainly stated holding was that "the State proved by clear and convincing

9

evidence that appellant's consent to the taking of his blood for analysis was voluntary." *Combest*, 981 S.W.2d at 960, 962; *see Madeley*, 2008 Tex. App. LEXIS 1320, at *9-10 (noting that *Combest* is unpersuasive in cases where arrest issue is disputed).

Although our holding in *Combest* did not decide an arrest issue in the license-suspension context, we have done so in other cases. *See Latimer*, 939 S.W.2d at 244-45; *Nottingham*, 908 S.W.2d at 588. These decisions demonstrate that the critical inquiry is not whether the person was under arrest for DWI at any time, or when the officer departed the hospital, but whether the person was under arrest when the officer requested the person's blood specimen. *See Latimer*, 939 S.W.2d at 244-45; *Nottingham*, 908 S.W.2d at 588; *see also* Tex. Transp. Code Ann. § 724.042(3). Events occurring after that point in time—including whether the blood specimen was ultimately provided under a warrant or whether the person was told they were not under arrest—are irrelevant to the administrative license-suspension proceeding.

Based on this record, we conclude that Lee acquiesced to Officer Morrow's show of authority and that she was under arrest when he requested her blood specimen. There is more than a scintilla of evidence in this record supporting the ALJ's findings that Lee was placed under arrest, asked to submit a blood specimen, and refused to submit a blood specimen after it was requested.

**Probable cause and reasonable suspicion**

Because the trial court's order did not specify the basis for its reversal, the Department also addressed the remaining findings necessary for administrative suspension of a driver's license: reasonable suspicion to stop the person and probable cause to believe that the person operated a motor vehicle in a public place while intoxicated.

10

"Reasonable suspicion exists if an officer has specific and articulable facts that, taken together with rational inferences from those facts, would lead the officer to reasonably suspect that a particular person has engaged or soon will engage in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). Here, Officer Morrow had reasonable suspicion to stop and investigate Lee because she was identified as the driver of the truck involved in a single-vehicle collision with a guardrail on a clear afternoon, resulting in her apparent injury. *See Alonzo v. State*, 251 S.W.3d 203, 208-09 (Tex. App.—Austin 2008, pet. ref'd).

Probable cause exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Hughes v. State*, 24 S.W.3d 833, 838-39 (Tex. Crim. App. 2000); *Suarez*, 2011 Tex. App. LEXIS 6981, at *10. Put differently, the Department need not prove that Lee was in fact driving while intoxicated, only that probable cause existed to believe that she was. *See Suarez*, 2011 Tex. App. LEXIS 6981, at *10 (citing *Texas Dep't of Pub. Safety v. Butler*, 110 S.W.3d 673, 677 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Church v. State*, 942 S.W.2d 139, 140 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd)). Here, Officer Morrow had probable cause to believe that Lee operated a motor vehicle in a public place while intoxicated because she was involved in a single-vehicle collision on the public roadway known as Hamilton Pool Road, an

11

identified witness told Officer Morrow that Lee failed to stop at a stop light and was driving "all over the road," Lee had difficulty speaking clearly, repeated things, admitted she had been drinking an uncertain amount the hour before the accident and had taken medication in a higher-than-recommended dose with alcohol.

The foregoing discussion demonstrates that the ALJ's findings on each of the issues in section 724.042 of the transportation code are supported by substantial evidence in the administrative record. As such, the county court at law erred in reversing the ALJ's decision.

## CONCLUSION

Having concluded that the county court at law erred in reversing the administrative law judge's decision because it was supported by substantial evidence, we sustain the Department's issue, reverse the county court at law's order and render judgment reinstating the ALJ's administrative order authorizing the Department to suspend Lee's driver's license for 180 days.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Rendered

Filed: August 31, 2012